IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES,

    Plaintiff,

v.                                                                                                                                       No. 23-cr-00750-JCH

BRADFORD EVANS,

    Defendant.

### MEMORANDUM OPINION AND ORDER

In *Defendant's Motion to Suppress Evidence* (ECF No. 33), and *Defendant's Supplemental Briefing to his Motion to Suppress Evidence* (ECF No. 68), Defendant Bradford Evans moves to suppress all evidence obtained derivative to a traffic stop and search of his vehicle. This Court held an evidentiary hearing on the initial motion to suppress on March 12, 2024. On request of Mr. Evans at the hearing, the Court permitted the parties to submit additional briefing. *See* Def.'s Suppl. Br., ECF No. 68 (hereinafter "ECF No. 68"); Gov.'s Suppl. Resp., ECF No. 71 (hereinafter "ECF No. 71"). Having considered the motion, briefs, evidence, arguments, applicable law, and otherwise being fully advised, the Court concludes that the motion to suppress should be denied.

I.    **FACTUAL BACKGROUND**

On May 8, 2023, Task Force Agent Julian Armijo was employed with Homeland Security Investigations and with New Mexico State Police.[1] Hr'g Tr. 12:18-19; 7:20-8:10. Agent Armijo was working on Interstate 40 at the 81-mile marker in Cibola County, New Mexico, when he pulled

---

[1] Agent Armijo has been in law enforcement since 2013. *See* Hr'g Tr. 5:5-19. He has been employed by the New Mexico State Police as an agent on the Interstate 40 K-9 Enforcement Task Force since 2022, in addition to his role as a Task Force Agent with Homeland Security Investigations. *Id.* at 5:5-19, 7:20-8:10. The objective of both the state and federal task forces is to interdict criminal activity on Interstate 40 and other roads throughout New Mexico. *Id.* Agent Armijo estimates that he has completed several hundred traffic stops throughout his career and has seized thousands of pounds of marijuana on Interstate 40. *See id.* at 29:18-20.

over a vehicle for speeding at 85 mph in a 75-mph zone. *Id.* at 14:13-14. After exiting his patrol car, Agent Armijo approached the passenger's side of the vehicle. Lapel Video, at 1:02-1:20. Inside the vehicle were Mr. Evans in the driver's seat and Breanna Cobbs in the passenger's seat. *Id.* at 1:20; *see also* Def.'s Mot. 1, ECF No. 33 (hereinafter "ECF No. 33"); Gov.'s Resp. 1, ECF No. 34 (hereinafter "ECF No. 34") (identifying passenger). Agent Armijo noticed that Mr. Evans and Ms. Cobbs both held freshly lit cigarettes but testified that he was not able to smell any cigarette smoke. Lapel Video, at 1:45-1:48; Hr'g Tr. 18:9-10. However, Agent Armijo did smell "a strong odor of marijuana emitting from the vehicle" through the open passenger-side window. Hr'g Tr. 18:12-13.

Mr. Evans gave Agent Armijo his license, registration, and proof of insurance.[2] Lapel Video, at 1:20-1:40. Agent Armijo asked Mr. Evans to exit the vehicle and follow him to his patrol car for a written warning. *Id.* at 1:40-1:48. Mr. Evans complied. *Id.* at 1:48-1:59. Agent Armijo identified a place for Mr. Evans to stand next to the patrol car. *Id.* at 1:58-2:00.

Agent Armijo began working on the warning. *Id.* at 2:00-6:24. As he did so, he made small talk with Mr. Evans and asked Mr. Evans about his travel. *Id.* at 2:00-2:01. Mr. Evans said he was going home to Texas from California with a stop in Las Vegas. *Id.* at 2:03-2:24. The conversation sounds friendly; both Agent Armijo and Mr. Evans laughed at times. *Id.* Agent Armijo actively used his computer to enter Mr. Evans's information during this exchange, advancing the traffic stop the entire time the two talked. *Id.* at 2:00-6:24.

After entering Mr. Evans's information—but before handing Mr. Evans a written warning—Agent Armijo said, "I'm just gonna go check the VIN on the vehicle and make sure it matches [Mr. Evans's documentation], okay? Just hang tight for me right here. I'll be right back."

---

[2] The United States also asserts that Agent Armijo noticed Mr. Evans's hands shaking when he passed over his documentation. Shaking hands are not apparent in the video. Lapel Video, at 1:20-1:43.

2

*Id.* at 6:20-6:27. Agent Armijo walked past Mr. Evans's vehicle via the passenger's side. *Id.* at 6:27-6:33. Walking around the front of the car, Agent Armijo looked at a sticker on the lower, driver's side of the windshield. *Id.* at 6:33-6:36.

Agent Armijo opened the driver's door to look at the VIN on the doorjamb. *Id.* at 6:37. He asked Ms. Cobbs, who was still seated in the passenger seat, "How are you doing today? Can I ask you a few questions about your travel? Where are you guys headed?" *Id.* at 6:38-7:13. Ms. Cobbs answered that she was traveling home to New Mexico from Las Vegas. *Id.* Agent Armijo said, "Well he's just getting a warning, we'll get you back on the road." *Id.* During this exchange, Agent Armijo stood outside the car and never entered the passenger compartment. *Id.*

Agent Armijo walked back to his patrol car where Mr. Evans was standing. *Id.* at 7:14-7:18. He told Mr. Evans that he checked the VIN and gave Mr. Evans a written warning for Mr. Evans to initial. *Id.* at 7:19-7:55.

Then the traffic stop took a turn. Agent Armijo asked Mr. Evans if he smoked marijuana or if he had been around anyone else who did. *Id.* at 8:06-8:11. Mr. Evans denied doing so or being around anyone else who smoked marijuana. *Id.* Agent Armijo told Mr. Evans that the car smelled like marijuana. *Id.* Mr. Evans again denied smoking marijuana, but admitted that his girlfriend, Ms. Cobbs, smokes. *Id.* at 8:12-8:32. Mr. Evans stated that he did not know when she last smoked and stated that she did not have any marijuana in the vehicle with her. *Id.* Agent Armijo asked if Mr. Evans had any other drugs in the vehicle; Mr. Evans denied having any. *Id.* at 8:32-8:45. Agent Armijo asked if Mr. Evans had any weapons; Mr. Evans admitted having a "strap" in the trunk. *Id.* at 8:44-8:55.

Agent Armijo then said, "Based on the odor of marijuana . . . do you give me consent to search your vehicle?" *Id.* at 8:56-9:50. Mr. Evans refused consent, insisting that they had not

3

smoked in the car and did not have marijuana in the car. *Id.* After more back and forth, Agent Armijo informed Mr. Evans that he would search the car anyway. *Id.* As Agent Armijo prepared to search, he distanced Mr. Evans from the vehicle. *Id.* at 10:24-10:54. Mr. Evans continued to object to the search. *Id.* Agent Armijo explained to him that he had probable cause to search the vehicle based on the odor of marijuana. *Id.* at 10:54-11:52. Mr. Evans continued insisting that there was no marijuana in the car. *Id.* Approximately 55 seconds later, Mr. Evans admitted to having "some crumbs of weed" in a bag in the vehicle and insisted that he show Agent Armijo the location of the marijuana. *Id.* at 11:52-12:03. Agent Armijo told Mr. Evans that he would search the vehicle himself and returned to the vehicle. *Id.* at 12:12-12:31. He ordered Ms. Cobbs to exit the vehicle, at which point she held her marijuana vape pen out to Agent Armijo through the passenger-side window. *Id.* at 12:31-13:07. Ms. Cobbs left the marijuana vape pen on the passenger seat of the vehicle and exited, pointing out the new location of the marijuana vape pen to Agent Armijo. *Id.*

With two more officers present, Agent Armijo began to search the vehicle, starting with the trunk. *Id.* at 13:38-24:30. He found guns and a substance that the United States has since identified as methamphetamine in a bag in the trunk and in the passenger compartment of the car. *Id.* The officers handcuffed and arrested Mr. Evans and Ms. Cobbs. *Id.*

Mr. Evans is now charged with possession with intent to distribute 500 grams and more of a mixture and substance containing methamphetamine and possessing a firearm in furtherance of a drug trafficking crime. Redacted Indictment 1-2, ECF No. 22.

## II.     ANALYSIS

A traffic stop is a seizure under the Fourth Amendment, and its legality is subject to the framework established in *Terry v. Ohio*, 392 U.S. 1 (1968). *See United States v. Phillips*, 71 F.4th 817, 822 (10th Cir. 2023). Under the *Terry* analysis, an officer's action must be justified at the

traffic stop's inception and the succeeding detention must be reasonably related in scope to the circumstances that justified the initial traffic stop. *United States v. Polly*, 630 F.3d 991, 997 (10th Cir. 2011). The United States has the burden to show that a seizure was sufficiently limited in scope and duration to satisfy the conditions of an investigative detention. *See Florida v. Royer*, 460 U.S. 491, 500 (1983). If an officer develops probable cause to believe that the stopped vehicle contains contraband, then they may extend the traffic stop and search the vehicle without a warrant. *See Phillips*, 71 F.4th at 823 (quoting *United States v. Bradford*, 423 F.3d 1149, 1159 (10th Cir. 2005)). An officer has probable cause "when the facts and circumstances within the officer['s] knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Patel v. Hall*, 849 F.3d 970, 981 (10th Cir. 2017). The United States has the burden to show that an agent had probable cause for their actions. *See United States v. Finefrock*, 668 F.2d 1168, 1170 (10th Cir. 1982).

Here, Mr. Evans does not dispute Agent Armijo's justification to stop him for speeding; Mr. Evans was driving 85 mph in a 75-mph zone. Rather, he contends that Agent Armijo never developed sufficient probable cause to extend the traffic stop and search the vehicle without a warrant. *See* ECF No. 68, at 6. Mr. Evans argues that Agent Armijo based his entire probable cause determination on the smell of marijuana alone, which does not provide sufficient probable cause to search a vehicle. *Id.* The government disagrees, contending that the smell of marijuana alone would be sufficient probable cause to search the vehicle. ECF No. 71, at 1. But it argues that Agent Armijo observed additional factors that contributed to his probable cause to search the vehicle. *Id.*

### A. Reasonableness of the Scope of the Detention

In his initial motion to suppress, Mr. Evans argued that the scope of the detention was unreasonable under *Terry* because Agent Armijo improperly extended the traffic stop by conducting the VIN check. *See* ECF No. 33, at 8. The issue shifted, however, after Agent Armijo testified that he smelled the "strong odor of marijuana emanating from the car" immediately upon approaching the vehicle. Hr'g Tr. 18:12-13. At this point, it became evident that Agent Armijo could expand the scope of the traffic stop almost immediately after it began. An officer may expand a traffic stop "beyond its initial purpose 'if the traffic stop has become a consensual encounter,' or 'if the officer has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring.'" *United States v. Moore*, 795 F.3d 1224, 1229 (10th Cir. 2015) (quoting *United States v. Caro*, 248 F.3d 1240, 1244 (10th Cir. 2001)). Here, Agent Armijo developed a reasonable suspicion that illegal activity was occurring when he smelled the odor of marijuana immediately upon approaching the car. *See United States v. Ozbirn*, 189 F.3d 1194, 1200 (10th Cir. 1999) (finding that officer had reasonable suspicion necessary to justify further detention and questioning after smelling marijuana upon first encountering vehicle at outset of traffic stop).

Agent Armijo testified that he smelled marijuana as soon as Mr. Evans rolled down the window of the car. Hr'g Tr. 18:12-15. Mr. Evans attacks Agent Armijo's credibility, questioning his claim that he smelled the marijuana emanating only from a vape pen despite the two freshly lit cigarettes in the car. *See* ECF No. 68, at 5. Agent Armijo testified that he had seen and handled marijuana vape pens several times before. *See* Hr'g Tr. 33:18-25. He also noted that in his experience, marijuana vape pens smell like marijuana when they are filled with THC and continue to smell even when they are not in use. *See id.* at 34:1-7. There is no evidence in the record about the potency of odor emitted from a marijuana vape pen compared to two freshly lit cigarettes. The Court will not speculate regarding that factual assertion and sees no evidentiary basis to find Agent

6

Armijo's testimony not credible on this factual issue. Accordingly, the Court finds that Agent Armijo smelled marijuana when he first approached the vehicle, and this gave him reasonable suspicion that illegal activity was occurring.

At this point, he could expand the traffic stop beyond the initial purpose of addressing the speeding violation. Therefore, his subsequent inspection of the vehicle's VIN and questioning of Ms. Cobbs about their travel plans did not result in an unconstitutional protracted stop.

### B. Probable Cause to Search the Vehicle

The government asserts that the odor of marijuana gave Agent Armijo probable cause to search the entire vehicle. "An officer's detection of the smell of drugs . . . in a car is entitled to substantial weight in the probable cause analysis and can be an independently sufficient basis for probable cause." *United States v. Phillips*, 71 F.4th 817, 823 (10th Cir. 2023) (citing *United States v. West*, 219 F.3d 1171, 1178 (10th Cir. 2000)). However, "[t]he scope of a warrantless search of an automobile 'is defined by the object of the search and the places in which there is probable cause to believe that it may be found.'" *United States v. Nielsen*, 9 F.3d 1487, 1491 (10th Cir. 1993) (quoting *United States v. Ross*, 456 U.S. 798, 824 (1982)); *see United States v. Torres*, 987 F.3d 893, 903 (10th Cir. 2021) ("'The smell of burnt marijuana' alone 'would lead a person of ordinary caution to believe the passenger compartments might contain marijuana.'" (quoting *Nielsen*, 9 F.3d at 1491)). It follows that the smell of marijuana alone in the passenger compartment of the car does not justify a search of the trunk of the car, as it is unreasonable to think that someone is smoking marijuana in the trunk of a vehicle. *See United States v. Wald*, 216 F.3d 1222, 1226 (10th Cir. 2000); *United States v. Bradford*, 423 F.3d 1149, 1160 (10th Cir. 2005); *Nielsen*, 9 F.3d at 1491. Rather, probable cause to search the trunk is only established if corroborating evidence of the smell is uncovered in the passenger compartment. *Bradford*, 423 F.3d at 1160 (citing *United*

*States v. Loucks*, 806 F.2d 208, 210-11 (10th Cir. 1986)). Once that probable cause is established by corroborating evidence, the officer can search the entire vehicle including the containers therein. *Id.* (citing *United States v. Ross*, 456 U.S. 798, 825 (1982)). This Court will address, chronologically, the facts that first gave Agent Armijo probable cause to search the passenger compartment of the vehicle, and then finally, probable cause to search the entire vehicle, including the trunk.

1. **Probable Cause to Search the Passenger Compartment**

    a. **Odor of Marijuana**

The very same odor of marijuana that gave Agent Armijo reasonable suspicion to extend the scope of the traffic stop also gave Agent Armijo probable cause to search the passenger compartment of the vehicle despite Mr. Evans's non-consent. The smell of burnt marijuana emanating from a vehicle would lead a reasonable person to believe that someone was smoking marijuana in the passenger compartment of the car. *See Nielsen*, 9 F.3d at 1491. Accordingly, Agent Armijo had probable cause to search the passenger compartment based on the odor of marijuana emanating from the vehicle.[3] Importantly, however, the odor alone did not give Agent Armijo probable cause to search the trunk because he did not have any corroborating evidence of the odor at that time—that evidence would come later.

    b. **Freshly Lit Cigarettes and Inconsistent Travel Plans**

After Agent Armijo noticed the odor of marijuana, he observed two other suspicious behaviors that further contributed to his probable cause to search the passenger compartment of

---

[3] Mr. Evans suggests that the odor of marijuana cannot establish probable cause because a federal prosecution for marijuana usage would be unlikely. The Court disagrees. The low probability of a law's enforcement does not prevent that law's violation from establishing probable cause or reasonable suspicion. *See Whren v. United States*, 517 U.S. 806, 818 (1996) ("[W]e are aware of no principle that would allow us to decide at what point a code of law becomes so. . . commonly violated that infraction itself can no longer be the ordinary measure of the lawfulness of enforcement.").

the vehicle.[4] First, Agent Armijo noticed that both Mr. Evans and Ms. Cobbs were holding freshly lit cigarettes when he first approached the car. Courts have considered the use of odor producing objects, like air fresheners or cigarettes, to mask the smell of illicit substances in their probable cause analyses. *See e.g.*, *United States v. Batara-Molina*, 60 F.4th 1251, 1256 (10th Cir. 2023) (acknowledging practice of using strong cover odors to mask the smell of drugs); *United States v. West*, 219 F.3d 1171, 1178-79 (10th Cir. 2000) (citing *United States v. Anderson*, 114 F.3d 1059, 1066 (10th Cir. 1997)) (noting that scent of air freshener used as masking agent is proper factor to consider in probable cause analysis); *United States v. Pavarini*, 359 F. Supp. 2d 1138, 1143 (D. Kan. 2005) (finding fact that driver lit cigarette as officer was approaching car contributed to probable cause). Agent Armijo considered the freshly lit cigarettes suspicious, testifying that he is familiar with the use of cigarette smoke to mask the odor of illegal narcotics in his experience working on drug smuggling cases. *See* Hr'g Tr. 18:23-19:7. Further, he testified that most drivers he stops for traffic infractions extinguish their cigarettes before he approaches their vehicles. *See id.* at 50:8-18. Courts "defer to the ability of trained law enforcement officers to distinguish between innocent and suspicious behaviors." *See United States v. Briggs*, 720 F.3d 1281, 1285 (10th Cir. 2013) (quoting *United States v. Zubia-Melendez*, 263 F.3d 1155, 1162 (10th Cir. 2001)). Thus, the freshly lit cigarettes contribute to the Court's finding of probable cause.

Then, Agent Armijo observed Mr. Evans and Ms. Cobbs tell inconsistent stories about their travel plans. So too, courts have recognized inconsistencies in a driver's and passenger's stated

---

[4] Mr. Evans argues that Agent Armijo made his entire probable cause determination based on the odor of marijuana alone. *See* ECF No. 68, at 5. However, on direct examination Agent Armijo stated that Mr. Evans's nervousness, the discrepancies in Mr. Evans's and Ms. Cobbs's stories, and the freshly lit cigarettes were all contributing factors that led him to believe that Mr. Evans was involved in criminal activity. *See* Hr'g Tr. 29:1-7. Regardless, probable cause is measured against an objective standard and the primary consideration is whether a reasonable officer in the same situation would have believed there was sufficient probable cause. *See United States v. Valenzuela*, 365 F.3d 892, 896-97 (10th Cir. 2004). Accordingly, this Court will consider all these factors in deciding whether Agent Armijo had probable cause.

travel plans as probative of suspicious activity. *See, e.g.*, *United States v. Kitchell*, 653 F.3d 1206, 1219 (10th Cir. 2011) (citing *United States v. Davis*, 636 F.3d 1281, 1291 (10th Cir. 2011)) (noting that inconsistencies in motorist's or passenger's stated travel plans can cause officer to suspect potential criminal activity); *United States v. Anderson*, 114 F.3d 1059, 1066 (10th Cir. 1997) (finding probable cause when driver and passenger gave "slightly conflicting" versions of travel plans, among other factors). Here, Mr. Evans said they were traveling from California, heading home to Texas, with a stop in Las Vegas; Ms. Cobbs said they were traveling from Las Vegas, heading home to New Mexico. Lapel Video, at 2:00-2:25, 6:37-7:11; *see Kitchell*, 653 F.3d at 1219. These inconsistencies added to Agent Armijo's probable cause to search the passenger compartment.

### 2. Probable Cause to Search the Trunk

Finally, Agent Armijo acquired probable cause to extend his search beyond the passenger compartment and into the trunk when Mr. Evans eventually confessed to having marijuana in the car and Ms. Cobbs identified her marijuana vape pen.

First, Mr. Evans admitted to having "some crumbs" of marijuana in the car. Lapel Video, at 11:52-12:03. A reasonable officer might think that a suspect would admit to having a small amount of drugs in a vehicle in an attempt to avoid an investigation that would reveal a much larger amount of drugs. *See United States v. Bradford*, 423 F.3d 1149, 1159 (10th Cir. 2005). Further, it became evident that Mr. Evans had lied to Agent Armijo about having marijuana, which could lead a reasonable officer to question the truthfulness of the other statements Mr. Evans made. Then, Ms. Cobbs handed Agent Armijo her marijuana vape pen. Lapel Video, at 12:31-13:07. These two pieces of evidence corroborated the odor that Agent Armijo smelled and provided him with probable cause to extend the search to the trunk and the containers therein. *See Bradford*, 423

F.3d at 1160. Accordingly, Agent Armijo's search of the entire vehicle was supported by sufficient probable cause.

### III. CONCLUSION

Because Agent Armijo had probable cause to search the vehicle, his search for and discovery of the methamphetamine and firearms were lawful. Therefore, the Court will deny Mr. Evans's motion to suppress.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Mr. Evans's *Motion to Suppress* (**ECF No. 33**) is **DENIED**.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**